**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Ebersole v. Powell,* **Slip Opinion No. 2014-Ohio-4078.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4078

THE STATE EX REL. EBERSOLE ET AL. *v.* THE CITY OF POWELL ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ebersole v. Powell,* Slip Opinion No. 2014-Ohio-4078.]**

*Elections—Mandamus—Writ sought to compel city council and city clerk to place proposed charter amendment on ballot—Writ denied.*

(No. 2014-1469—Submitted September 17, 2014—Decided September 19, 2014.)

IN MANDAMUS.

_____

**Per Curiam**.

{¶ 1} On June 17, 2014, the city council of Powell, Ohio ("city council"), approved Ordinance No. 2014-10, a development plan for property in downtown Powell.  In response, relators, Brian Ebersole, Sharon Valvona, and Thomas Happensack, formed a committee to circulate petitions to place three items on the November 4, 2014 ballot: a referendum to block Ordinance No. 2014-10 from taking effect, an initiative to pass an ordinance repealing Ordinance

No. 2014-10, and an amendment to the city charter that would, among other things, nullify Ordinance No. 2014-10.

{¶ 2} The city council refused to refer the proposed charter amendment to the voters.[1] Relators now seek a writ of mandamus to compel respondents, the city council and City Clerk Sue Ross, to place the charter amendment on the November ballot. We deny the writ for the reasons explained below.

### Legal Background on Amending the City Charter

{¶ 3} Article XII, Section 12.01 of the Powell City Charter governs charter amendments: "Any section of this Charter may be amended as provided in Article XVIII, Section 9 of the Ohio Constitution, by the submission of the proposed amendment or amendments to the electors of the City." The charter imposes no other procedural requirements.

{¶ 4} The only relevant provision in Article XVIII, Section 9 of the Constitution is that "upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, [the proposed amendment] shall be submitted [to the voters] by such legislative authority."

{¶ 5} However, we have held that statutory requirements governing referendum and initiative petitions also apply to charter amendments, insofar as those statutory requirements do not conflict with the Ohio Constitution or the city charter. *See State ex rel. Hackworth v. Hughes*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 31; *State ex rel. Spadafora v. Toledo City Council*, 71 Ohio St.3d 546, 549, 644 N.E.2d 393 (1994).

---

[1] The city council approved the referendum and initiative for placement on the ballot. However, the Delaware County Board of Elections sustained a protest and refused to place them on the ballot. In a related action, Supreme Court case No. 2014-1520, relators seek a writ of mandamus to compel the board of elections to place the referendum and initiative on the November ballot. *See State ex rel. Ebersole v. Delaware Cty. Bd. of Elections,* __ Ohio St.3d __, 2014-Ohio-4077, ___ N.E.3d ___.

## *Facts and Procedural History*

{¶ 6}   In 2005, the city council amended its zoning code to create two new planned districts, one of which is called "Downtown Business District." Permissible property uses in the Downtown Business District include retail shops, office facilities, and multifamily dwellings.  At the same time, the city council created a district called "Downtown District Overlay District," which imposed additional zoning requirements on the property in the Downtown Business District.

{¶ 7}   The property located at 147 West Olentangy Street in Powell, Ohio, lies in the Downtown Business District.  The property consists of 8.3 acres of mostly undeveloped land.

{¶ 8}   The property owner, the Center at Powell Crossing, L.L.C. ("Powell Crossing"), filed a final-development-plan application with the city, proposing new construction on the property that would include 14,000 square feet of retail space and 64 residential units.  On June 17, 2014, the city council approved the development plan by adopting Ordinance No. 2014-10.

{¶ 9}   On July 17, 2014, relators filed petitions with the city clerk in support of three separate ballot measures:

{¶ 10} (1) A referendum to reject Ordinance No. 2014-10.

{¶ 11} (2) An initiative to approve an ordinance repealing Ordinance No. 2014-10.

{¶ 12} (3) A proposed amendment to the city charter to establish a new Comprehensive Plan for Zoning and Development in Powell.

{¶ 13} The city clerk transmitted the three petitions to the Delaware County Board of Elections on July 28, 2014.  Powell Crossing and Donald R. Kenney Jr. filed a notice of protest with the board, contesting all three petitions. The board members deferred consideration of the challenges, concluding that, at

that stage of the process, the role of the board was limited to determining the validity of the petition signatures.

{¶ 14} The board voted to validate 376 signatures on the referendum petition, 367 signatures on the repeal initiative petition, and 378 signatures on the charter-amendment petition, and notified the city council of those validations.

{¶ 15} Ordinance No. 2014-41, to place the proposed charter amendment on the November ballot, received its first reading before the city council on August 5, 2014. The city council took up the referendum as proposed Resolution No. 2014-16, and the repeal initiative as proposed Resolution No. 2014-17, and voted to table both matters.

{¶ 16} The next city council meeting occurred on August 19, 2014. The city council revised slightly the number of valid signatures on each petition from the numbers certified by the board of elections, but concluded nevertheless that each of the three proposed ballot measures had a sufficient number of valid signatures to qualify for the ballot.

{¶ 17} The city council voted unanimously to approve Resolution No. 2014-16 and Resolution No. 2014-17. The charter amendment, Ordinance No. 2014-41, then received its second reading. The city council voted unanimously not to adopt Ordinance No. 2014-41 (meaning that the proposed charter amendment would not appear on the ballot). It apparently did so in reliance on the legal opinion of the city law director that, on its face, the charter amendment constituted an unlawful delegation of legislative authority into private hands.

{¶ 18} On August 26, 2014, the board of elections met to consider the protests against the referendum and initiative and voted to accept the protests on several grounds. (The protest against the proposed charter amendment was of course moot.)

{¶ 19} As a result of the combined actions of the city council and the board of elections, none of the three ballot measures is currently certified for the November 4, 2014 ballot.

{¶ 20} On August 22, 2014, relators filed this mandamus action to compel the city council and City Clerk Sue Ross to place the proposed charter amendment on the ballot. We granted Powell Crossing (the property owner) leave to intervene and denied intervention to Donald Kenney.

*Analysis*

*Legal requirements for mandamus*

{¶ 21} To be entitled to a writ of mandamus, relators must establish that (1) they have a clear legal right to have the proposed charter amendment presented to the voters, (2) respondents have a corresponding legal duty to submit the proposed charter amendment to the electors of Powell on November 4, 2014, and (3) relators possess no adequate remedy in the ordinary course of law. *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 54, 641 N.E.2d 1075 (1994).

{¶ 22} Because of the proximity of the November 4, 2014 election, and specifically the September 20, 2014 deadline for finalizing UOCAVA ballots,[2] relators have established that they lack a remedy in the ordinary course of the law. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27.

*The proposed charter amendment*

{¶ 23} The proposed charter amendment establishes a procedure by which Powell will create a new comprehensive zoning and development plan. The creation of the new plan begins with the organization of a Comprehensive Plan Commission, tasked with drafting a Preliminary Comprehensive Plan. The

---

[2] Pursuant to R.C. 3511.04(B), the board of elections must begin providing absent voter ballots upon request to certain uniformed service members, their families, and other citizens under the Uniformed and Overseas Citizens Absentee Voters Act ("UOCAVA") no later than 45 days before the general election.

commission is to consist of five members: (1) the president of the Bartholomew Run Homeowners Association or such person's designee, (2) the president of the Olentangy Ridge Civic Association or such person's designee, (3) the president of the Grandshire Homeowners Association or such person's designee, (4) the president of the Liberty Lakes Homeowners Association or such person's designee, and (5) the president of the Murphy Park Homeowners Association or such person's designee.

{¶ 24} Under the proposed charter amendment, the commission must prepare its Preliminary Comprehensive Plan in three steps:

{¶ 25} Phase I: Make findings, based in part on input from the public during at least two public workshops, regarding the current state of the Powell community's character and identity in light of current socioeconomic conditions.

{¶ 26} Phase II: Draft a composite plan identifying specific zones or districts.

{¶ 27} Phase III: Make recommendations to city council through the Preliminary Comprehensive Plan.

{¶ 28} The city council must then consider the Preliminary Comprehensive Plan, "make adjustments as necessary consistent with the Phase I findings of [the] Comprehensive Plan Commission, and pass an ordinance no later than March 31, 2016 legislatively adopting a Final Comprehensive Plan." The proposed charter amendment then goes on to enumerate "objective criteria" with which the Final Comprehensive Plan must comply.

{¶ 29} Finally, the proposed charter amendment directly and indirectly addresses Ordinance No. 2014-10, the ordinance approving the Powell Crossing development plan, in at least three places. In Article 4, Section 19, it mandates that the Downtown Business District shall not be developed with high-density housing. Article 4, Section 20 states that all ordinances must comply with the Final Comprehensive Plan, and Article 4, Section 21 states that the Final

Comprehensive Plan "shall not be compatible with Ordinance No. 2014-10 and/or the Final Development Plan for the Center at Powell Crossing LLC." And finally, the proposed charter amendment includes uncodified law barring any party, public or private, from taking any action, including construction activity, in reliance on Ordinance No. 2014-10.

*The charter amendment unlawfully delegates legislative power*

**{¶ 30}** The United States Supreme Court has held that it is unconstitutional for a city to delegate its "legislative power, originally given by the people to a legislative body, * * * to a narrow segment of the community." *Eastlake v. Forest City Ents., Inc*., 426 U.S. 668, 677, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). In *Eubank v. Richmond*, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912), the court invalidated a city ordinance that left it to the property owners of two-thirds of the property abutting any street to determine the location of building setback lines. And in *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), the United States Supreme Court struck down an ordinance that made the development of philanthropic homes in residential areas contingent upon the consent of the owners of two-thirds of nearby property.

**{¶ 31}** Like the ordinances at issue in *Eubank* and *Roberge,* here the proposed charter amendment would be a "standardless delegation of power to a limited group of property owners." *Eastlake* at 678. As explained above, under the proposed charter amendment, a commission composed of five private citizens would be responsible for recommending a new comprehensive zoning and development plan to the city council. The city council would then be required to consider the recommendations and adopt a final plan. But the city council's authority in this process would be sharply constrained by the findings of the five private citizens on the commission. Specifically, when adopting a final plan, the city council would be permitted to "make adjustments" to the commission's

preliminary plan only to the extent that they are consistent with the *commission's* findings at Phase I. And the proposed charter amendment does not set forth any standards to govern those findings. In short, the city council would be deprived of final decision-making authority over zoning matters.

{¶ 32} Therefore, the proposed charter amendment violates *Eubank* and *Roberge*, and the city council did not have a clear legal duty to put the measure on the November 4, 2014 ballot.

### *Conclusion*

{¶ 33} For the foregoing reasons, we deny the writ.

Writ denied.

O'CONNOR, C.J., and LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER, J., dissents and would grant the writ.

_____

Callender Law Group and Christopher Burch, for relators.

Frost Brown Todd, L.L.C., Eugene L. Hollins, Powell Law Director, and Jennifer B. Croghan, for respondents.

Vorys, Sater, Seymour & Pease, L.L.P., Bruce L. Ingram, Joseph R. Miller, and Christopher L. Ingram, for intervening respondent.

Frost Brown Todd, L.L.C., Philip K. Hartman, and Yazan S. Ashrawi; and John Gotherman, urging denial of the writ for amicus curiae Ohio Municipal League.

Kristen L. Sours, urging denial of the writ for amici curiae Ohio Home Builders Association and BIA of Central Ohio.

_____