**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections,* **Slip Opinion No. 2014-Ohio-4077.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4077

THE STATE EX REL. EBERSOLE ET AL., *v.* DELAWARE COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections,* **Slip Opinion No. 2014-Ohio-4077.]**

*Elections—Initiative and referendum in charter municipalities—Administrative action by city council distinguished from legislative action—Effect of charter on duties of board of elections.*

(No. 2014-1520—Submitted September 17, 2014—Decided September 19, 2014.)

IN MANDAMUS.

————————————

**Per Curiam**.

**{¶ 1}** On June 17, 2014, the city council of Powell, Ohio, approved Ordinance 2014-10, a development plan for property in downtown Powell. In response, relators, Brian Ebersole, Sharon Valvona, and Thomas Happensack, formed a committee to circulate petitions to place three items on the November 4, 2014 ballot: a referendum to block Ordinance 2014-10 from taking effect, an

initiative to pass an ordinance repealing Ordinance 2014-10, and an amendment to the city charter that would, among other things, nullify Ordinance 2014-10.

{¶ 2} The city council approved the referendum and initiative for placement on the ballot. However, the Delaware County Board of Elections sustained a protest and refused to place them on the ballot. In this case, relators seek a writ of mandamus to compel the board of elections to place the referendum and initiative on the ballot.[1] We deny the writ for the reasons explained below.

*Legal Background on Referendum and Initiative*

{¶ 3} The Ohio Constitution reserves the powers of initiative and referendum to the people of each municipality "on all questions which such municipality may now or hereafter be authorized by law to control by legislative action," in the manner provided by law. Ohio Constitution, Article II, Section 1f. In this case, the city charter defines the manner in which these powers are exercised.

{¶ 4} "Any ordinance passed by the Council shall be subject to referendum, except emergency ordinances * * *." Powell City Charter, Article VI, Section 6.04. The process begins with the filing of a petition in the office of the city council clerk, calling for the repeal of an ordinance passed within the last 30 days. The petition must contain signatures from electors of the city equal to at least 10 percent of the total votes cast at the last preceding general municipal election. *Id.*

{¶ 5} The clerk must transmit a certified copy of the petition to the board of elections within ten days. The board's responsibility at that point is merely to verify the signatures on the petition. Within ten days, the board must return the petition to the clerk, with a statement attesting to the number of electors who

---

[1] The city council refused to refer the proposed charter amendment to the voters. In a related action, Supreme Court case No. 2014-1469, relators seek a writ of mandamus to compel the city council and city council clerk, Sue Ross, to place the charter amendment on the November ballot.

signed the petition. The clerk must then submit the petition and statement to the council on the date of its next regular meeting. *Id*.

**{¶ 6}** "Council shall determine the sufficiency and validity of the petition." *Id*. The meaning of the phrase "sufficiency and validity" is among the disputes at the heart of these cases.

**{¶ 7}** If council determines that the petition is sufficient and valid, then at that meeting, council shall read and act upon the petition. Either council will itself repeal the existing ordinance or the clerk will provide for submission of the new proposed ordinance to a vote of the city electors. In that case, the board of elections shall submit the ordinance to the electors at the next general election occurring subsequent to 75 days after receipt of the ordinance from the clerk of council.

**{¶ 8}** The rules governing initiatives are identical to those for referenda (with one minor distinction not relevant here). *Id*. at Section 6.02.[2]

### Facts and Procedural History

**{¶ 9}** In 2005, the city council amended its zoning code to create the Downtown Business District. The 2005 Ordinance established two new planned districts, one of which was the Downtown Business District. Permissible property uses in the Downtown Business District included retail shops, office facilities, and multifamily dwellings. At the same time, council created the "Downtown District Overlay District," which imposed additional zoning requirements on the property in the Downtown Business District.

**{¶ 10}** The property located at 147 West Olentangy Street in Powell, Ohio, lies in the Downtown Business District. The property consists of 8.3 acres of largely undeveloped land.

---

[2] Pursuant to Section 6.04, the clerk must convey a referendum petition to the board of elections for signature verification within ten days of receipt. For reasons that are not clear, Section 6.02 provides that the clerk cannot transmit an initiative petition to the board for signature verification until *after* the passage of ten days.

**{¶ 11}** The property owner, the Center at Powell Crossing, LLC ("Powell Crossing"), filed a final-development-plan application with the city, proposing a new construction on the property that would include 14,000 square feet of retail space and 64 residential units. On June 17, 2014, the city council approved the development plan by adopting Ordinance 2014-10.

**{¶ 12}** On July 17, 2014, relators filed petitions with the city council clerk in support of three separate ballot measures:

**{¶ 13}** (1) A referendum to reject Ordinance 2014-10.

**{¶ 14}** (2) An initiative to approve an ordinance repealing Ordinance 2014-10.

**{¶ 15}** (3) An amendment to the city charter to establish a new comprehensive plan for zoning and development.

**{¶ 16}** The council clerk transmitted the three petitions to the Delaware County Board of Elections on July 28, 2014. On August 1, 2014, Powell Crossing and Donald R. Kenney Jr. filed a notice of protest with the board, contesting all three petitions. The board members deferred consideration of the challenges, concluding that at that stage of the process, the role of the board was limited to determining the validity of the petition signatures.

**{¶ 17}** The board voted to validate 376 signatures on the referendum petition, 367 signatures on the repeal initiative petition, and 378 signatures on the charter-amendment petition, and notified the city council of those validations.

**{¶ 18}** Ordinance 2014-41, to place the charter amendment on the November ballot, received its first reading before the city council on August 5, 2014. The council took up the referendum as proposed Resolution 2014-16, and the repeal initiative as proposed Resolution 2014-17, and voted to table both matters.

**{¶ 19}** The next city council meeting occurred on August 19, 2014. The council revised slightly the number of valid signatures on each petition from the

numbers certified by the board of elections, but concluded nevertheless that each of the three ballot measures had a sufficient number of valid signatures to qualify for the ballot. The council then voted unanimously to approve Resolution 2014-16 and Resolution 2014-17 and not to adopt Ordinance 2014-41.

{¶ 20} The board of elections met to consider the protests against the referendum and initiative on August 26, 2014. (The protest against the charter amendment was of course moot.) At that meeting, the board voted (1) to accept the protest of the referendum on the grounds that the subject matter was administrative in nature and therefore not subject to referendum, to accept the protest of the initiative on the same grounds, to reject both protests to the extent that they objected to the manner in which the petitions indicated the specific precinct of the signers, and to accept the protest against both petitions on the grounds that the format of the petitions did not comply with the Powell City Charter and forms prescribed by the secretary of state.

{¶ 21} As a result of the combined actions of the city council and the board of elections, none of the three ballot measures is currently certified for the November 4, 2014 ballot.

{¶ 22} On September 2, 2014, relators filed this mandamus action to compel the Delaware County Board of Elections to place the referendum and initiative on the ballot. We granted leave to intervene to Powell Crossing and denied intervention to Donald Kenney.

*Analysis*

*Legal requirements for mandamus*

{¶ 23} To be entitled to a writ of mandamus, relators must establish that (1) they have a clear legal right to have their ballot measure(s) presented to the voters, (2) respondents have a corresponding legal duty to submit the ballot measure(s) to the electors of Powell on November 4, 2014, and (3) relators

possess no adequate remedy in the ordinary course of the law. *Morris v. City Council of Macedonia*, 71 Ohio St.3d 52, 54, 641 N.E.2d 1075 (1994).

{¶ 24} Because of the proximity of the November 4, 2014 election, and specifically the September 20, 2014 deadline for finalizing UOCAVA ballots,[3] relators have established that they lack a remedy in the ordinary course of the law. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27.

*Laches*

{¶ 25} At the outset, we must once again decide whether laches bars an expedited elections case.[4] The board of elections sustained the two protests on August 26, 2014. Relators filed this case on September 2, 2014, seven days later. The board accuses relators of unreasonable delay.

{¶ 26} But in fact the actual delay was only four days. August 30 and 31 fell on a weekend, and September 1 was Labor Day, so the clerk's office was not open to accept filings. Under these circumstances, we decline to bar the suit on the grounds of laches.

*The city council acted in its administrative capacity*

{¶ 27} City councils can act in an administrative capacity. *Donnelly v. Fairview Park*, 13 Ohio St.2d 1, 233 N.E.2d 500 (1968), paragraph one of the syllabus. And when they act in an administrative, rather than legislative, capacity,

---

[3] Pursuant to R.C. 3511.04(B), the board of elections must begin providing absent voter ballots upon request to certain uniformed service members, their families, and other citizens under the Uniformed and Overseas Citizens Absentee Voters Act no later than 45 days before the general election.

[4] The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). Laches may bar relief in an election-related matter if the person seeking relief fails to act with the " 'utmost diligence.' " *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30, quoting *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7.

their resolutions and ordinances are not subject to referendum. *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 697 N.E.2d 181 (1998), paragraph two of the syllabus. The board of elections rejected the referendum petition because it believed that Ordinance 2014-10 was passed by the city council in its administrative capacity.

**{¶ 28}** Relators offer a number of responses to this contention. First, they argue that Ordinance 2014-10 was a legislative act subject to referendum, not an administrative act. Second, they contend that a challenge to the substance of a referendum is unripe until the referendum is approved. And third, they claim that the board has only ministerial duties in the referendum process and lacks authority to review the substance of the referendum. We will consider each argument in turn.

*Legislative v. administrative action*

**{¶ 29}** By its terms, Article II, Section 1f, limits the referendum and initiative power to questions the municipality is "authorized by law to control by legislative action." *See Myers v. Schiering*, 27 Ohio St.2d 11, 271 N.E.2d 864 (1971), paragraph one of the syllabus. Because citizens of a municipality cannot exercise referendum powers greater than what the Constitution affords, an administrative action is beyond the scope of the referendum power. *Buckeye Community* at 544.

**{¶ 30}** The test for determining if an action is legislative or administrative is "whether the action taken is one enacting a law, ordinance, or regulation, or executing a law, ordinance, or regulation already in existence." *Donnelly* at paragraph two of the syllabus. Thus, city ordinances that adopt final development plans pursuant to preexisting planned community development, without changing the zoning, are not subject to referendum. *State ex rel. Commt. for the Referendum of Ordinance No. 3844-02 v. Norris*, 99 Ohio St.3d 336, 2003-Ohio-3887, 792 N.E.2d 186, ¶ 33. In fact, we have made clear that in such cases, the

board of elections is "required to withhold the initiative and referendum from the ballot." *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 17 (because it arises from the same constitutional source, the power of initiative is subject to the same limitation as the power of referendum).

**{¶ 31}** The development authorized by Ordinance 2014-10 complied with the preexisting requirements for the Downtown Business District and for the Downtown District Overlay District and did not require any zoning changes. Relators do not dispute this point.

**{¶ 32}** Relators fashion a creative argument to suggest that the ordinance nevertheless in effect operates as legislation, rather than as administrative implementation of a preexisting scheme. Powell Zoning Code 1143.11(c)(9) requires a developer to provide evidence of financing for a project. The Powell director of development admitted at the protest hearing that he waived this requirement because he was familiar with Powell Crossing through prior development projects and so considered it responsible. According to relators, Powell Crossing also failed to show its ability to post a bond, failed to have the application signed by the property owner, failed to verify the truthfulness of the information in the application, and omitted exhibits from the preliminary development plan.

**{¶ 33}** Relators argue that strict compliance with the requirements of Zoning Code 1143.11 is necessary to trigger the jurisdiction of the Powell zoning administrator and the Planning and Zoning Commission, and they conclude that "[w]hen Council acts to approve a Planned District Development Plan that did not properly invoke the jurisdiction of the Powell Zoning and Planning Commission, then it necessarily acts legislatively."

**{¶ 34}** Relators' argument rests on faulty logic. It erases the distinction between when a legislature *changes* its zoning code and when a legislature

8

*misapplies* or misconstrues its zoning code. In the former case, the amendment is a legislative act subject to referendum. *See, e.g., State ex rel. Zonders v. Delaware Cty. Bd. of Elections*, 69 Ohio St.3d 5, 13, 630 N.E.2d 313 (1994); *Peachtree Dev. Co. v. Paul*, 67 Ohio St.2d 345, 351-352, 423 N.E.2d 1087 (1981). The latter is an error that the administrative appeal process in R.C. Chapter 2506 exists to correct. Adopting relators' argument would make every alleged zoning error subject to referendum and wipe out the well-established distinction between municipal legislative and administrative activity.

**{¶ 35}** The board unfortunately confuses the issue by citing R.C. 2506.01 to argue that relators failed to exhaust their administrative remedies and therefore, because they had an adequate remedy in the ordinary course of the law, that mandamus should not issue. The underlying grievance that relators seek to remedy through mandamus is that the board refused to let the public vote on the referendum and initiative, not that passage of the development plan was procedurally improper.

**{¶ 36}** Nevertheless, the board is correct that Ordinance 2014-10, because it approves development within the contours of a preexisting zoning code, is not subject to referendum or ordinance.

**{¶ 37}** Alternatively, relators call upon us to overrule *Buckeye Community*. This court will depart from stare decisis when the decision to be overruled was wrongly decided at the time or when a change in circumstances has rendered continued adherence to the decision no longer justified, the decision defies practical workability, and abandoning the precedent would not create undue hardship for those who have relied upon it. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 48. Under these criteria, relators do not make a strong case for overruling *Buckeye Community*.

**{¶ 38}** In considering the future viability of *Buckeye Community*, we must keep in mind what the case did and did not decide. *Buckeye Community* did not

create the distinction between legislative and administrative actions at the municipal level, nor did it announce the rule that administrative actions are beyond the referendum power. Those principles were established 30 years prior to *Buckeye Community*, in *Donnelly*, 13 Ohio St.2d 1, 233 N.E.2d 500 (1968), and *Myers*, 27 Ohio St.2d 11, 271 N.E.2d 864 (1971).

{¶ 39} The question in *Buckeye Community* was whether a different rule should apply to charter municipalities. In the original decision, we had ruled that the home-rule amendment, Article XVIII, Section 7, gave charter cities unlimited discretion to fashion whatever form of government they chose, and Article II, Section 1f was not a substantive limitation on that power. *Buckeye Community Hope Found. v. Cuyahoga Falls*, 81 Ohio St.3d 559, 692 N.E.2d 997 (1998).

{¶ 40} However, on motion for reconsideration, we reversed course by a four-to-three margin. The new majority opinion noted that since the inception of home rule, this court had consistently held that the exercise of home-rule powers was limited "by other provisions of the Constitution." *Buckeye Community*, 82 Ohio St.3d 539, 541-542, 697 N.E.2d 181 (1998). We have repeatedly reaffirmed the holding of *Buckeye Community*. *E.g., State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, ¶ 20; *State ex rel. Citizen Action v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 35.

{¶ 41} But the strongest argument against overruling *Buckeye Community* is that, far from eliminating an unworkable precedent (the second prong of the *Galatis* standard), doing so would create a system rife with complications. The scope of the referendum power would vary from municipality to municipality, depending on whether or not the city had a charter and, if so, what referendum powers that charter provided.

{¶ 42} In sum, the subject matter of the proposed referendum and initiative is not proper for the ballot.

*Ripeness*

**{¶ 43}** Alternatively, relators argue that no "case or controversy" exists until and unless the voters approve the referendum (or initiative). Thus, according to relators, the board's objection to the contents of the two petitions was premature.

**{¶ 44}** The response to this argument is simple: the "case or controversy" requirement is a predicate requirement for a court to exercise subject-matter jurisdiction. *See, e.g., State v. Graves*, 179 Ohio App.3d 107, 2008-Ohio-5763, 900 N.E.2d 1045 (4th Dist.), at ¶ 5 ("an appellate court's jurisdiction is limited to actual cases or controversies under Section 3, Article IV, of the Ohio Constitution"). By contrast, as discussed in the next section, the board of elections has an affirmative statutory duty to review the content of proposed referenda and initiatives, and the only time that duty can be performed meaningfully is before the election.

*The jurisdiction of the board*

**{¶ 45}** Finally, relators argue that the Powell City Charter does not vest the board of elections with authority to review the substance of a ballot submission. Rather, Article VI, Sections 6.02 (initiatives) and 6.04 (referendum) state that the board of elections shall examine the signatures to determine the number of electors signing and then "shall return" the petitions to the clerk.

**{¶ 46}** Under state law, the duties of the boards of elections include the duty to "[r]eview, examine, and certify the sufficiency and validity of petitions." R.C. 3501.11(K). And R.C. 3501.39(A)(2) states that a board of elections must accept a petition unless a written protest is filed, the board conducts a hearing, and the election officials determine that "the petition violates any requirement established by law." According to relators, these state-law provisions are inapplicable because "the Powell City Charter controls and makes no mention of [them]."

**{¶ 47}** This argument misstates fundamental home-rule principles. In matters of local self-government, if a portion of a municipal charter *expressly* conflicts with parallel state law, then the charter will prevail. *State ex rel. Minor v. Eschen*, 74 Ohio St.3d 134, 138, 656 N.E.2d 940 (1995). The Powell charter is silent on the question of the board's power to conduct protests, and therefore no conflict exists. Moreover, Article VI, Section 6.05 of the charter expressly states that where the charter is silent concerning referendum and initiative procedures, state law will govern.

**{¶ 48}** The issue is not as complicated as the parties make it appear. The duties of the board, as set out in state law, supplement the duties described in the charter. The board was within its statutory authority to conduct the protest hearing.

### *Conclusion*

**{¶ 49}** For the foregoing reasons, we deny the writ.

Writ denied.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment only.

_____

Callender Law Group and Christopher Burch, for relators.

Carol O'Brien, Delaware County Prosecuting Attorney, and Christopher D. Betts and Andrew J. King, Assistant Prosecuting Attorneys, for respondent Delaware County Board of Elections.

Vorys, Sater, Seymour & Pease, L.L.P., and Bruce L. Ingram, Joseph R. Miller, and Christopher L. Ingram, for intervening respondent the Center at Powell Crossing, LLC.

_____