**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Langhenry v. Britt,* Slip Opinion No. 2017-Ohio-7172.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7172

THE STATE EX REL. LANGHENRY, LAW DIR., ET AL. *v.* BRITT, CLERK.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Langhenry v. Britt,* Slip Opinion No. 2017-Ohio-7172.]**

*Mandamus—Elections—Under the Cleveland City Charter, an emergency measure providing for the usual daily operation of a municipal department is subject to referendum—Clerk of the Cleveland City Council had a clear legal duty to verify the sufficiency of petition signatures—Relators have a clear legal right to compel performance of that ministerial duty—The right to seek repeal of a law by initiative is not an adequate remedy in the ordinary course of the law—Clerk and law director have adverse legal interests in this case—Writ granted.*

(No. 2017-0753—Submitted July 26, 2017—Decided August 10, 2017.)

IN MANDAMUS.

_____

**KENNEDY, J.**

## I.  Introduction

**{¶ 1}** Respondent, Patricia Britt, clerk of the Cleveland City Council ("the clerk"), rejected a referendum petition on the grounds that it would unconstitutionally abridge an existing contract.  Relator, Barbara A. Langhenry, law director of the city of Cleveland, seeks a writ of mandamus to compel the clerk to determine the sufficiency of the referendum petition.  We grant the writ.

## II.  Facts and Procedural History

**{¶ 2}** On September 15, 1992, the city of Cleveland and Cuyahoga County entered into a "Cooperative Agreement" relating to the "Gateway Arena Project" to construct, among other things, a new professional basketball arena.  As part of the agreement, the county agreed to issue "Series 1992 Arena Bonds" to finance the cost of constructing the arena.  The county also agreed to make the construction funds available to the Gateway Economic Development Corporation of Greater Cleveland ("Gateway") through a revolving loan agreement.

**{¶ 3}** To assist with the financing, the city passed Cleveland Ordinance No. 324-92, exempting arena admissions proceeds from municipal taxation, so long as the Series 1992 Arena Bonds remained outstanding.  The ordinance required Gateway to place in trust the amount it otherwise would have paid to the city in taxes, with those funds being used to service the bonds and with the excess payable to the city's general revenue fund.

**{¶ 4}** Twenty-five years later, on April 24, 2017, the Cleveland City Council adopted Cleveland Ordinance No. 305-17.  The ordinance contained two relevant provisions.  First, it added an admission-proceeds-tax exemption relating to new "Series 2017 Arena Bonds" issued by Cuyahoga County to finance renovations to the arena.  The exemption, issued under similar terms and conditions as the original 1992 tax exemption, would remain in effect so long as the Series 2017 Arena Bonds remained outstanding.  Second, the ordinance authorized the

city's directors of finance and law to enter into an amendment to the Cooperative Agreement.

{¶ 5} The city council approved the ordinance as an emergency measure, to take effect immediately, by a vote of more than two-thirds of the members. Cleveland Ordinance No. 305-17 therefore became effective on April 25, 2017.

{¶ 6} Also on April 25, 2017, the city, through its directors of finance and law, and Cuyahoga County executed "Supplemental Agreement No. 1" to the Cooperative Agreement. Supplemental Agreement No. 1 was based on the county's issuance of Series 2017 Arena Bonds to finance improvements to the arena. This agreement recognized the city's commitment to keep admissions proceeds exempt from taxation during the life of the Series 2017 Arena Bonds so long as the amount Gateway otherwise would have paid to the city in taxes is held in trust to service the bonds.

{¶ 7} On May 22, 2017, the clerk received a petition for a referendum on Cleveland Ordinance No. 305-17. Upon receipt of the petition, the clerk did not determine the sufficiency of the signatures on the part-petitions. Instead, acting through her deputy clerk, she rejected the petition on the ground that repealing Cleveland Ordinance No. 305-17 "would unconstitutionally impair an already existing and binding contract."

{¶ 8} On May 26, 2017, Diane S. Bufford, Jennifer A. Blakeney, Verdia Y. Conner, Khalilah A. Worley, and Linda C. Robinson sent a letter to the law director, demanding that she exercise her authority to seek a writ of mandamus compelling the clerk to accept the petition. In response, Langhenry commenced the present complaint for a writ of mandamus.

{¶ 9} On July 12, 2017, we denied motions to dismiss and issued an alternative writ of mandamus. ___ Ohio St.3d ___, 2017-Ohio-5799, ___ N.E.3d ___. In the same order, we granted Bufford, Blakeney, Conner, Worley, and Robinson leave to intervene as relators. *Id.*

### III.     Legal Analysis

A. *The Law Director is Entitled to a Writ of Mandamus*

**{¶ 10}** To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Although this case primarily concerns the first two prongs—clear legal right and clear legal duty—the clerk also disputes the third element.

**{¶ 11}** A writ of mandamus is not available if the relator has an adequate remedy in the ordinary course of the law. *State ex rel. JobsOhio v. Goodman*, 133 Ohio St.3d 297, 2012-Ohio-4425, 978 N.E.2d 153, ¶ 15. The clerk contends that there is an adequate remedy available: opponents of the ordinance could attempt to repeal it by initiative. But "[t]he principle that mandamus will not lie where there is an adequate remedy in the ordinary course of the law signifies such latter remedy in the *courts*." (Emphasis sic.) *State ex rel. Conn v. Noble*, 165 Ohio St. 564, 566, 138 N.E.2d 302 (1956) (rejecting claim that the right of initiative was an adequate remedy at law). The relators in this case have no adequate remedy in the *ordinary* course of the law. We therefore must consider whether they have shown the existence of a legal right and a legal duty.

1. *The right of referendum under the Cleveland City Charter*

**{¶ 12}** The constitutional right of referendum " ' "amount[s] to a veto power, over enactments of representative bodies." ' " *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 18, quoting *Eastlake v. Forest City Ents., Inc.*, 426 U.S. 668, 673, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), quoting *James v. Valtierra*, 402 U.S. 137, 141, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971). The Ohio Constitution reserves to the people the right to referenda of laws passed by the General Assembly and provides that no law shall

go into effect for a period of 90 days following enactment, so as to allow time for a referendum. Ohio Constitution, Article II, Section 1c. However, there are certain categories of state laws to which the right of referendum does not extend, one of which is emergency laws that go into effect immediately. Ohio Constitution, Article II, Section 1d.

{¶ 13} The Cleveland City Charter provision governing municipal referenda is significantly different. Under the charter, an emergency measure may address either of two contingencies: (1) it may be "for the immediate preservation of the public peace, property, health, or safety," or (2) it may "provid[e] for the usual daily operation of a Municipal department." Cleveland City Charter Section 36. One category of emergency legislation is subject to the right of referendum, and the other is not:

> Ordinances passed as emergency measures for the immediate preservation of the public peace, property, health, or safety and providing for the refinancing of bonds, notes or other securities of the City shall not be subject to referendum. Otherwise, emergency measures shall be subject to referendum in like manner as other ordinances, except that they shall go into effect at the time indicated in the ordinances.

Cleveland City Charter Section 64.

{¶ 14} The first clause of Cleveland Ordinance No. 305-17 states, "[T]his ordinance constitutes an emergency measure providing for the usual daily operation of a municipal department." By its plain language, Cleveland Ordinance No. 305-17 is subject to referendum.

## 2. *The authority of the clerk*

{¶ 15} The central question in this case is whether the clerk had the authority to reject the referendum petition. As a general rule, when reviewing the sufficiency of a petition, municipal legislative officials have limited discretion to assess matters of form and no authority to review matters of substance such as the legality of the proposed measure. *See State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 30-31 (village clerk exceeded her authority by deciding that the initiative petition involved a subject that the village was not authorized to control by legislative action).

{¶ 16} The Cleveland charter confers no greater discretion upon the clerk. "When [a referendum] petition is filed with the Clerk of the Council he shall determine the sufficiency thereof in the manner provided in this Charter for an initiative petition for an ordinance." Cleveland City Charter Section 60. In accordance with Section 51 of the Cleveland City Charter, the clerk shall determine whether the petition has been signed by the required number of qualified electors. Cleveland City Charter Section 51.

{¶ 17} The clerk suggests a number of reasons why it was within her discretion to reject the petitions. She argues that the petitions were untimely because the emergency ordinance had already gone into effect before they were filed, but she cites no authority for her proposition that a referendum petition must in all cases be filed before the ordinance goes into effect. Indeed, Section 64 of the Cleveland City Charter clearly contemplates that some emergency measures will be subject to referendum notwithstanding the fact that they take effect immediately. The final sentence of Section 64 even addresses what happens when an ordinance is rejected in a referendum after taking effect:

> If, when submitted to a vote of the electors of the City, an emergency measure be not approved by a majority of those voting thereon, it

6

shall be considered repealed as regards any further action thereunder; but the measure so repealed shall be deemed sufficient authority for payment in accordance with the ordinance, of any expense incurred previous to the referendum vote thereon.

Rejecting the petition on the grounds that it was untimely would therefore have been an error and an abuse of discretion.

**{¶ 18}** Alternatively, the clerk contends that she was within her rights to reject the referendum petition because Cleveland Ordinance No. 305-17 was an administrative measure and therefore not subject to referendum. The constitutional power of referendum applies to matters that municipalities are authorized to control "by legislative action." Ohio Constitution, Article II, Section 1f. When a city council acts in an *administrative* fashion, its resolutions and ordinances are not subject to referendum. *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, ¶ 27. We need not reach the question whether the clerk has discretion to determine whether a measure is administrative because Cleveland Ordinance No. 305-17 is a legislative measure.

**{¶ 19}** "The test for determining whether an action is legislative or administrative is 'whether the action taken is one enacting a law, ordinance, or regulation, or executing a law, ordinance, or regulation already in existence.' " *Id.* at ¶ 30, quoting *Donnelly v. Fairview Park*, 13 Ohio St.2d 1, 233 N.E.2d 500 (1968), paragraph two of the syllabus. Stated differently, an ordinance that merely carries out the policy or purpose already declared by the legislative body is an administrative action. *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 44. So, for example, approval of a development plan that comports with existing zoning regulations is administrative. *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d

529, ¶ 27-28.  But an amendment to the zoning code itself is a legislative act.  *See State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections*, 80 Ohio St.3d 165, 168-169, 685 N.E.2d 224 (1997).

{¶ 20} In 1992, Cleveland City Council approved a tax abatement to help finance the *construction* of a downtown basketball arena.  That abatement contained a sunset provision: it expired upon repayment of the Series 1992 Arena Bonds.  The city did not, in 1992, obligate itself to pay for future renovations to the arena.  Cleveland Ordinance No. 305-17 therefore represents the adoption of a new policy and a new undertaking: the refurbishment of the arena, financed by Series 2017 Arena Bonds.  City officials in 2017 had no legislative authority to enter into a new agreement with the county absent an enabling ordinance.  We therefore conclude that Cleveland Ordinance No. 305-17 is a legislative measure and not an administrative one.

{¶ 21} Finally, the clerk contends that she was correct to reject the referendum petition because it is unconstitutional.  Whether the referendum is unconstitutional is a different question from whether the clerk has the legal authority to make that determination.  To bridge the gap, the clerk posits a distinction between the referendum petition itself and the substance of the petition, claiming that she

> has not made a determination as to the legality or constitutionality of the substantive terms of the referendum petition or the Ordinance.  Instead, [she] has applied a separate legal principle * * * to determine that the referendum petition itself, not the substance of the measure being initiated or the Ordinance that is sought to be repealed, violates the Contract Clause.

This proposed distinction finds no support in the Cleveland City Charter or the jurisprudence of this court. In fact, it conflicts with the rule that "the city council [cannot] assess the constitutionality of a proposal, because that role is reserved for the courts." *State ex rel. Ebersole v. Powell*, 141 Ohio St.3d 17, 2014-Ohio-4283, 21 N.E.3d 274, ¶ 6.

{¶ 22} *Ebersole v. Powell* suggests that we should grant the writ of mandamus without reaching the constitutional question. *See id*. at ¶ 13-14. One of the amici, the Cavaliers Operating Company, L.L.C., argues that we should *deny* the writ without reaching the constitutional question.

{¶ 23} The Cavaliers urge the court to find that the referendum is a nullity because it seeks to repeal legal authorization of acts that have already been fully performed. Cleveland Ordinance No. 305-17 authorized city officials to enter into the Supplemental Agreement, and they have done so. According to the Cavaliers, therefore, there is nothing left for a referendum to invalidate. This argument rests on a false premise. Cleveland Ordinance No. 305-17 contained a second relevant provision, namely, the admission-proceeds-tax exemption in connection with the Series 2017 Arena Bonds. That provision has not been fully performed. Therefore, the Cavaliers mootness argument is not well taken.

{¶ 24} The clerk had a clear legal duty to perform the ministerial function of her office—verifying the sufficiency of the petition signatures—and relators have a clear legal right to compel the performance of that duty. Relators are without an adequate remedy in the ordinary course of the law. We therefore grant the writ of mandamus.

### 3. *The constitutional claim*

{¶ 25} In light of the foregoing analysis, it is unnecessary to address the underlying constitutional question at this juncture. *See Ebersole v. Powell*, 141 Ohio St.3d 17, 2014-Ohio-4283, 21 N.E.3d 274, at ¶ 13 ("The proper time for an

aggrieved party to challenge the constitutionality of the charter amendment is after the voters approve the measure, assuming they do so").

B. *The Cleveland Director of Law Has Standing*

{¶ 26} None of the seven justices has expressed any disagreement with the premise set forth above: the clerk violated the Cleveland City Charter when she refused to carry out her ministerial duty. The dissenting justices would dismiss the case. They would hold that the law director and the clerk are not adverse parties. That, however, is not so.

{¶ 27} The charter commands that when a city officer "fails to perform any duty required by law," the law director "shall" make an application for a writ of mandamus. Cleveland City Charter Section 89. The clerk failed to perform a duty required by law when she refused to review the petition, so the law director was legally required to file this lawsuit. The law director would have been in violation of the charter if she had not done so.

{¶ 28} The dissent seems to think that there is no adversity of interest between the parties because the director of law worked with the city council and the mayor on the deal to renovate the arena. But the issue before us is not whether the arena deal should go forward. The issue here is simpler: whether the clerk must determine the sufficiency of the petition and, if the petition is sufficient, allow the people to vote on the referendum. One may reasonably be in favor of both the arena renovation and providing citizens the opportunity to vote on the renovation.

{¶ 29} Moreover, there is a genuine dispute in this case because the charter mandates that the law director file a mandamus action if the clerk fails to perform any of her duties. And here, the clerk has failed to perform a duty. The law director argues that the clerk must review the sufficiency of the petitions. The clerk argues that she does not have to complete this task because the proposed referendum is unconstitutional. Therefore, the law director and the clerk have adverse legal interests in this case.

**{¶ 30}** In addition, the adversity requirement is met because in filing this mandamus action, the law director was defending a "public right," and it has long been understood that "the people are regarded as the real party" in such a lawsuit. *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1, 5, 215 N.E.2d 592 (1966).

**{¶ 31}** In reaching the opposite conclusion, the dissent relies on three cases that are highly distinguishable because none of them involves a director of law or her responsibility to ensure that an officer of a municipal corporation performs her public duty according to charter and statute. In *State ex rel. Wood v. McClelland*, a lawyer representing a mortgagor in a foreclosure action filed a writ of prohibition in his own name attempting to prevent the judge and magistrate in the underlying action from exercising jurisdiction over a count in the complaint. 140 Ohio St.3d 331, 2014-Ohio-3969, 18 N.E.3d 423, ¶ 1-2, 10. In *State ex rel. Lorain Cty. Bd. of Commrs. v. Lorain Cty. Court of Common Pleas*, we granted a writ of prohibition preventing a common pleas judge from ordering the county commissioners to pay the sheriff to provide security for court operations, because no lawsuit had been filed between the commissioners and the sheriff. 143 Ohio St.3d 522, 2015-Ohio-3704, 39 N.E.3d 1245, ¶ 2, 21, 26-27. Lastly, in *Kincaid v. Erie Ins. Co.*, this court correctly held that when an insured has not actually presented a claim for expenses to an insurer for payment, "there is no actual controversy." 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 20.

**{¶ 32}** One wonders what would happen if the dissent's view carried the day. In this case, the intervenors sought to dismiss the law director's lawsuit and to pursue their own taxpayer lawsuit. In moving to dismiss, the intervenors raised arguments similar to those advanced by the dissent today. The court voted six to one to overrule the intervenors' motion to dismiss and allowed them to intervene in this lawsuit. ___ Ohio St.3d ___, 2017-Ohio-5799, ___ N.E.3d ___. As a consequence, the intervenors filed an application to dismiss their separate taxpayer

lawsuit, which this court granted. *Cleveland ex rel. Blakeney v. Britt*, ___ Ohio St.3d ___, 2017-Ohio-5832, ___ N.E.3d ___.

{¶ 33} Imagine if the court now reversed course and, as urged by the dissent, dismissed the law director's lawsuit. Almost certainly, the intervenors would refile the lawsuit they had dismissed. The Cleveland City Charter allows for a taxpayer lawsuit if after demand upon the law director, the law director fails to file a lawsuit. Cleveland City Charter Section 90. If the dissent's view were adopted, we would have to figure out how to apply this provision. There are only two possible options.

{¶ 34} One possibility is that we could say the taxpayers couldn't pursue their lawsuit because the law director had not failed to file a lawsuit—indeed, the law director filed one and we dismissed it. This would be a literal reading of the charter. The result, though, would be that no one could challenge the clerk's refusal to follow the law—not the law director because, in the dissent's view, there wasn't the requisite adversity and not the taxpayers because the law director had not failed to file a lawsuit. It's the ultimate Catch-22: heads, the city wins; tails, the taxpayers lose.

{¶ 35} The other possibility is that we could decide to ignore the "fail to file" requirement because we had dismissed the law director's lawsuit. This scenario would at least preserve the rights guaranteed to taxpayers under the charter. But it would not get the opponents of the referendum what they want. Faced with such a lawsuit, we would have little choice but to grant the writ of mandamus: municipal clerks plainly don't have the authority under Ohio law to decide if a referendum petition is constitutional. So under this scenario—if the dissent's view were to carry the day—the result would be the same as the one reached by the majority today. All we would be doing is delaying the inevitable.

**Conclusion**

{¶ 36} For the reasons stated above, we hold that relators are entitled to the requested writ of mandamus.

Writ granted.

O'NEILL, FISCHER, and DEWINE, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by O'Connor, C.J., and French, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 37} Respectfully, I dissent.

{¶ 38} Before this court will issue a writ of mandamus, the circumstances must demonstrate that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy at law. *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 18. "The writ of mandamus is not granted by right. It is a high prerogative writ, and its issuance rests in the sound discretion of the court." *Patton v. Springfield Bd. of Edn.*, 40 Ohio St.3d 14, 15, 531 N.E.2d 310 (1988).

{¶ 39} Nonetheless, this court only decides cases that present actual controversies. *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, ¶ 44; *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970).

{¶ 40} And as we explained in *State ex rel. Barclays Bank, P.L.C. v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 660 N.E.2d 458 (1996),

> Actual controversies are presented only when the plaintiff sues an adverse party. This means not merely a party in sharp and acrimonious disagreement with the plaintiff, but a party from whose

adverse conduct or adverse property interest the plaintiff properly claims the protection of the law. Thus, we hold that the presence of a disagreement, however sharp and acrimonious it may be, is insufficient to create an actual controversy if the parties to the action do not have adverse legal interests.

*Id*. at 542.

**{¶ 41}** Here, the law director and the clerk are not adverse parties with adverse legal interests. Pursuant to Section 78 of the Cleveland City Charter, the law director serves at the pleasure of the mayor, and pursuant to Section 31, the council clerk serves at the pleasure of the city council. Thus, the law director and the council clerk each answer to people whose interests are aligned in favor of the arena renovation and in opposition to the referendum. The law director worked with the mayor and the city council—as required by Cleveland City Charter Section 83—in enacting the tax exemption to secure financing for the arena renovation. Supplemental Agreement No. 1 to the Cooperative Agreement contains the endorsement by the law director as required by Section 83, and the law director, along with the finance director of the city of Cleveland, are signatories on behalf of the city.

**{¶ 42}** When the petition seeking a referendum was presented to the clerk of the city council and the clerk refused to certify it, Cleveland City Charter Section 89 required the law director to file an action in mandamus. That section provides: "In case any officer or commission fails to perform any duty required by law, the Director of Law *shall* apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty." (Emphasis added.)

**{¶ 43}** Nonetheless, the charter contemplates that the law director may be unwilling or unable to bring such an action, and it states in Section 90:

> In case the Director of Law, upon written request of any taxpayer of the City, fails to make any application provided for in the preceding three sections, such taxpayer may institute suit or proceedings for such purpose in his own name on behalf of the City. No such suit or proceeding shall be entertained by any court until such request to the Director of Law shall first have been made, nor until the taxpayer shall have given security for the costs of the proceedings.

Thus, when the law director cannot or does not comply with Section 89, Section 90 authorizes a taxpayer to institute a mandamus action if the taxpayer has asked the law director to institute an action and the law director fails to do so.

{¶ 44} But here, the law director seems to have recognized that filing this mandamus action may have raised a conflict of interest, and she appointed outside counsel to represent both parties and then brought this action in her own name. However, the appointment of outside counsel does not change the fact that the named parties to this mandamus action lack adverse legal interests—outside counsel is not the party in this case but only an advocate with no standing to bring this action in its own right. *See State ex rel. Wood v. McClelland*, 140 Ohio St.3d 331, 2014-Ohio-3969, 18 N.E.3d 423, ¶ 10 ("lawyers do not have standing to bring claims in their own names based on violations of their clients' rights"). And without adverse parties to this litigation, there is no justiciable issue that this court can decide.

{¶ 45} The majority confuses standing with the need for an adverse legal interest. After all, *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1, 5, 215 N.E.2d 592 (1966), on which it relies, is a taxpayer standing case. And although standing and an adverse legal interest are both necessary components of a justiciable case, they are different concepts—standing requires either a personal stake in the outcome of the controversy, *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134

Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 21, or the authority to sue created by legislation, *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 48.

{¶ 46} Section 89 of the Cleveland City Charter gives the law director standing to seek a writ of mandamus to compel an officer or commission to perform a duty required by law without having any personal stake in the controversy. But the existence of standing, by itself, does not demonstrate that the law director and the city council clerk in fact have adverse legal interests in this mandamus action.

{¶ 47} In my view, the court ought not to wade into this morass, where the city is essentially suing itself to repeal legislation approved by the legislative branch—because it was enacted by the city council—and authorized by the executive branch—because it was signed into law by the mayor—all in an effort to invalidate a contract that the relator herself signed. This matter is analogous to *State ex rel. Lorain Cty. Bd. of Commrs. v. Lorain Cty. Court of Common Pleas*, 143 Ohio St.3d 522, 2015-Ohio-3704, 39 N.E.3d 1245, in which the common pleas court ordered the county commissioners to appropriate funds to pay for security at the courthouse and another facility. In that case, we explained that the common pleas court had no authority to adjudicate the dispute between the county commissioners and the county sheriff; because the sheriff had not sued the commissioners, there were no adverse parties before the court and no justiciable controversy presented for decision. *Id*. at ¶ 2, 21.

{¶ 48} Similarly here, the law director and the clerk are not adverse parties, there is no justiciable controversy for this court to decide, and this action should be dismissed. *See Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 20.

{¶ 49} I recognize that the taxpayers who circulated the referendum petitions have been permitted to intervene in this action. However, that does not save this case from dismissal. We determine justiciability as of the commencement

of suit, and post-filing events, such as the substitution of the real party in interest for a party with no standing to sue, cannot cure a lack of justiciability at the outset. *See Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, at ¶ 24-26, 38. These intervenors were not the parties that filed this action, and therefore they cannot make this nonjusticiable controversy retroactively justiciable.

{¶ 50} The majority's reliance on its forecast of a parade of horribles is nothing more than an "in terrorem" argument that the taxpayers may or may not be able to institute suit in their own names if the court were to dismiss this case, and its speculation that eventually the case might end up in the same place as proposed by the majority is contrary to our role as a court. After all, it is well-settled law that this court does not issue advisory opinions. *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51; *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18, citing *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (2000), and *Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio St.3d 176, 495 N.E.2d 904 (1986), syllabus. The predictive exercise is also highly unseemly because it reads like an advocate's brief rather than an opinion of this court.

{¶ 51} A thorough review of the facts of this case leads to the conclusion that there is no justiciable issue for this court to decide because the law director and the city council clerk lack adverse legal interests, and therefore I would dismiss the complaint.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

————————————

Roetzel & Andress, L.P.A., Stephen W. Funk, and Leighann K. Fink, for relator.

The Chandra Law Firm, L.L.C., Subodh Chandra, and Peter Pattakos, for intervening relators.

Walter Haverfield, L.L.P., R. Todd Hunt, Aimee W. Lane, and Benjamin G. Chojnacki, for respondent.

Mayle, Ray & Mayle, L.L.C., and Andrew R. Mayle, urging granting of the writ for amicus curiae Property Investor's Network, Inc.

Goldstein Gragel, L.L.C., Susan L. Gragel, and Richard L. Stoper Jr., urging denial of the writ for amicus curiae Building Laborers' Union Local 310.

Michael W. Deemer, urging denial of the writ for amicus curiae Downtown Cleveland Alliance and Greater Cleveland Sports Commission.

Jason Hillman, urging denial of the writ for amicus curiae Cavaliers Operating Company, L.L.C.

Calfee, Halter & Griswold, L.L.P., and James F. Lang, urging denial of the writ for amicus curiae Rick Chiricosta, Christopher M. Connor, Dr. Delos Cosgrove, Alexander Cutler, Carole Hoover, Chuck Jones, Jerry Kelsheimer, Bill Lacey, Ed Largent, A. Malachi Mixon III, Beth Mooney, Bernie Moreno, Merrick Murphy, Joe Roman, Matthew A. Ouimet, Albert Ratner, and Dr. Jerry Sue Thornton.

_____