NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8109

THE STATE EX REL. FLAK ET AL. *v.* BETRAS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Flak v. Betras,* Slip Opinion No. 2017-Ohio-8109.]

*Mandamus—Writs of mandamus sought to compel county board of elections to place proposed city-charter amendments on election ballot—Proposed amendments exceed constitutional authority of a municipality's authority to enact—Writs denied.*

(No. 2017-1239—Submitted September 29, 2017—Decided October 6, 2017.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This expedited election matter concerns two efforts to place proposed amendments to the Youngstown City Charter on the November 2017 ballot: the People's Bill of Rights for Fair Elections and Access to Local Government ("the Elections Amendment"),[1] and the "Youngstown Drinking Water

_____

[1] Relators Lynn Anderson, Susan L. Beiersdorfer, Kathleen K. Berry, Marguerite Linda Felice, and Dario David Hunter comprise the Committee of Petitioners for the Elections Amendment.

Protection Bill of Rights" ("the Water Amendment").[2]  Relators seek writs of mandamus to compel respondents, the Mahoning County Board of Elections and its individual members,[3] to certify relators' petitions to place the proposed amendments on the ballot.  We deny the writs.

**Background**

*The Elections Amendment* (Section 69.1)

**{¶ 2}**  The Elections Amendment would add a new Section 69.1 to the city charter declaring that the people of Youngstown have a right to fair elections and access to local government.  The Elections Amendment would, among other things, prohibit campaign contributions to local candidates or issues from anyone other than registered Youngstown voters, cap any such contributions at $100 per contributor per candidate or issue, adopt a "top-two" primary election for mayor and for ward representative, and mandate the use of paper ballots to verify electronic election results.

**{¶ 3}**  Section (d) of the Elections Amendment, captioned "Right to Enforcement," affirms the right of the people of Youngstown to enforce the rights set forth in the amendment:

> If the City of Youngstown fails to enforce or defend this Amendment, or, a court fails to uphold this Amendment, any natural person may enforce this Amendment through nonviolent direct action or via a suit at law or in equity as a private attorney general plaintiff, for damages and costs of litigation, including, without limitation, expert and attorney fees.  If any appointed or elected

---

[2] Relators Christine Agnes Flak, Mary C. Khumprakob, Raymond Nakley Jr., Young Tensley, and Hattie Wilkins comprise the Committee of Petitioners for the Water Amendment.

[3] The members of the Mahoning County Board of Elections are David J. Betras, Mark E. Munroe, Robert J. Wasko, and Tracey S. Winbush.

official infringes upon the people of Youngstown's adoption of this Amendment through their right of democratic initiative power, any natural person may enforce these rights through nonviolent direct action.

Section (d) provides that "City of Youngstown law enforcement, and cooperating agencies acting within the jurisdiction of the City of Youngstown, shall have no lawful authority to surveil, detain, arrest, or otherwise impede natural persons enforcing these rights."

*The Water Amendment* (Section 133)

**{¶ 4}** The second proposed charter amendment, the Water Amendment, would add a new Section 133 to the city charter. It declares that the people of Youngstown, "along with ecosystems and natural communities within the city, possess the right to clean water, air, and soil, and to be free from activities that would violate this right and expose citizens to the harmful effects of contaminants in their water supply, including, but not limited to, the drilling of new wells or extraction of oil and gas." Section (b) of the Water Amendment contains the same language as Section (d) of the Elections Amendment, authorizing private citizens to enforce their rights through nonviolent direct action or by filing suit as a private attorney general. And the Water Amendment also contains the provision barring "City of Youngstown law enforcement, and cooperating agencies acting within the jurisdiction of the City of Youngstown" from "surveil[ing], detain[ing], arrest[ing], or otherwise imped[ing] natural persons enforcing these rights."

*Mahoning County Board of Elections proceedings*

**{¶ 5}** On July 24, 2017, the Water Amendment committee submitted its part-petitions to the Youngstown City Clerk. The Mahoning County Board of Elections ("BOE") certified a sufficient number of valid signatures for the Water

Amendment to qualify for the ballot.[4]  On August 23, the Youngstown City Council unanimously passed an ordinance instructing the BOE to place the Water Amendment on the November 2017 ballot.

{¶ 6}  The Elections Amendment committee delivered its part-petitions to the city clerk on August 7, 2017.  After the BOE validated the signatures, the city council unanimously passed a resolution instructing the BOE to place the Elections Amendment on the November ballot.  The BOE received the two proposed amendments on August 25, 2017.

{¶ 7}  On September 6, 2017, the BOE met to consider placement of the two proposed amendments on the ballot.  BOE Chairman Mark Munroe expressed concern that both amendments "contain provisions that are beyond the scope of cities to enact via initiative."  BOE member David Betras agreed that the proposed amendments contained provisions that exceeded the authority of the city to adopt. The BOE then voted four to zero not to certify the amendments to appear on the ballot, on the grounds that they exceeded the city's initiative power.

{¶ 8}  The next day, September 7, relators filed the present expedited election complaint against the BOE and its individual members.  The parties have filed briefs and evidence in accordance with the calendar for expedited election cases set forth in S.Ct.Prac.R. 12.08.

## Legal Analysis

{¶ 9}  To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law.  *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13.  When reviewing a

---

[4] The complaint identifies the numbers of signatures validated on both petitions, without expressly noting that the numbers were sufficient for the proposed amendments to qualify for the ballot. However, the sufficiency of the signatures does not appear to be in dispute.

decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.

{¶ 10} Under the Ohio Constitution, municipalities have "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Constitution, Article XVIII, Section 3. The Constitution extends that same authority to the people acting in their sovereign capacity: "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action * * *."[5] Ohio Constitution, Article II, Section 1f. These clauses impose limitations on the permissible subject matter of a municipal initiative or referendum petition. *See, e.g.*, *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 545, 697 N.E.2d 181 (1998) (holding that the phrase "by legislative action" in Article II, Section 1f means that a municipal ordinance is not subject to referendum if it constitutes an administrative, rather than a legislative, action).

{¶ 11} R.C. 3501.11(K)(1) provides that a county board of elections must "[r]eview, examine, and certify the sufficiency and validity of petitions." We have held that the statute gives the county boards of election authority "to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative." *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 9.

---

[5] "An initiative is a proposal which allows the people to directly enact a law if they accept the proposal in an election and a referendum is a proposal which allows the people to directly repeal a law which has already been enacted by the legislature." *State ex rel. Todd v. Felger*, 7th Dist. Columbiana No. 06 CO 38, 2007-Ohio-731, ¶ 3.

**{¶ 12}** Our jurisprudence has distinguished between an elections board's determining that a proposed initiative may be unconstitutional and an elections board's determining that a proposed initiative falls outside the scope of the permissible subject matter of a municipal initiative. Thus, in *Youngstown*, we held that a county board of elections cannot refuse to certify a ballot measure based on its assessment that the measure, in substance, would be unconstitutional if enacted. *Id.* at ¶ 4-5, 12 (requiring a county board of elections to place a proposed city-charter amendment on the ballot despite its concern that the measure would be unenforceable because it conflicted with the Ohio Constitution). This court " 'will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature.' " *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 16, quoting *State ex rel. Cramer v. Brown*, 7 Ohio St.3d 5, 6, 454 N.E.2d 1321 (1983).

**{¶ 13}** Just last year, however, this court held that a county board of elections may properly refuse to certify a proposed municipal ordinance to the ballot when the ordinance encompasses a matter beyond the scope of the municipality's authority to enact. *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, ¶ 22. In *Sensible Norwood*, the county board of elections refused to certify to the ballot a proposed municipal ordinance, the effect of which would have been to change the city's marijuana ordinances. We noted that a municipality has authority to define misdemeanor offenses but that the power to define felonies is committed to the General Assembly. *Id.* at ¶ 10. And because the power to designate felonies is not a matter that municipalities are "authorized by law to control by legislative action" (in the language of Article II, Section 1f of the Ohio Constitution), the supporters of the proposed ordinance had no legal right to place the measure on the ballot. *Id.* at ¶ 12.

**{¶ 14}** It is fair to say that it is sometimes difficult to distinguish between a provision that a municipality is not authorized to adopt by legislative action (something an elections board may determine per *Sensible Norwood*) and one that is simply unconstitutional (something an elections board may not determine, per *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, at ¶ 12). But that is the line our caselaw has drawn.

**{¶ 15}** *Sensible Norwood* is directly on point here. Here, the BOE rejected the petitions, in part because the proposed amendments purport to create a private cause of action. Just as a municipality may not create a felony, a municipality is not authorized to create new causes of action. *See* Ohio Constitution, Article XVIII, Section 3; *see also Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 150 ("state law * * * determines what injuries are recognized and what remedies are available").

**{¶ 16}** The dispositive question in this mandamus action is whether the BOE violated a clear legal duty by refusing to certify relators' petitions to place the proposed amendments on the ballot. In refusing to certify the petitions, the BOE acted consistently with our most recent pronouncement on the matter—*Sensible Norwood*. We cannot conclude that in doing so it violated a clear legal duty. Thus, we deny the extraordinary writs.

**{¶ 17}** The dissenting opinion not only concludes that the BOE violated a clear legal duty but also would declare the recently enacted 2016 Sub.H.B. No. 463 ("H.B. 463"), effective April 6, 2017, unconstitutional. But we do not reach constitutional issues unless it is necessary to do so. *State ex rel. BSW Development Group v. Dayton*, 83 Ohio St.3d 338, 345, 699 N.E.2d 1271 (1998). Adherence to this principle seems particularly appropriate in this expedited election matter, with its short time frame for consideration, limited briefing, and lack of participation by the state, *see* R.C. 2721.12(A). Because the matter may be properly resolved under

our pre-H.B. 463 caselaw, we leave consideration of the constitutionality of the new enactment for another day.

{¶ 18} Relators have failed to establish a clear legal duty on the BOE's part to certify their petitions to place the proposed amendments on the November ballot, and we therefore deny the requested writs of mandamus.

Writs denied.

O'DONNELL, KENNEDY, FRENCH, and DEWINE, JJ., concur.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J., and O'NEILL, J.

_____

**FISCHER, J., dissenting.**

{¶ 19} Recently, in *State ex rel. McGinn v. Walker*, ___ Ohio St.3d ___, 2017-Ohio-7714, __ N.E.3d ___, this court denied requests for writs of mandamus to compel county boards of elections to certify initiative petitions to place county charters on the November ballot. In that case, we did not address the constitutionality of R.C. 3501.11(K)(2). *See id.* at ¶ 24 (plurality opinion). However, although today's majority does not reach the issue, the constitutionality of that statute is now squarely before us. I conclude that to the limited extent that it incorporates R.C. 3501.38(M), R.C. 3501.11(K)(2) violates the separation-of-powers doctrine by granting the power of judicial review to county boards of elections, an arm of the executive branch; therefore, I must respectfully dissent. I would hold that R.C. 3501.11(K)(2) is unconstitutional to that limited extent, and I would grant the writs of mandamus requested in this case.

## I. ANALYSIS

{¶ 20} Respondent Mahoning County Board of Elections ("the BOE") makes two primary arguments in opposition to the requested writs of mandamus. First, it contends that mandamus cannot issue because relators, the committees of petitioners for the two proposed city-charter amendments (and their individual

8

members), have an adequate remedy in the ordinary course of the law. Second, the BOE argues that the proposed amendments are not proper initiative measures and that a county board of elections has the authority to make that determination.

## A. Adequate remedy at law

**{¶ 21}** The relator in an expedited election case almost always lacks an adequate remedy at law because the relevant election was imminent at the time the county board of elections took whatever action the relator is complaining of. *See, e.g.*, *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 17. As was true in previous cases, "given the proximity of the election, an injunction would arguably not constitute an adequate remedy because any 'appellate process would last well past the election.' " *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 292, 649 N.E.2d 1205 (1995), quoting *State ex rel. Smart v. McKinley*, 64 Ohio St.2d 5, 6, 412 N.E.2d 393 (1980); *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

**{¶ 22}** R.C. 3511.04(B) requires county boards of elections to have absentee ballots under the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. 1973ff, ready for distribution no later than 45 days before each election; the deadline for having the absentee ballots ready for this year's general election was Monday, September 25, *see* R.C. 1.14. This court has held that a party seeking ballot access has no adequate remedy in the ordinary course of the law when the deadline for UOCAVA ballots is imminent. *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, ¶ 22-24 (holding that the relators had no adequate remedy at law when they filed suit 18 days before the UOCAVA deadline).

**{¶ 23}** Here, the BOE does not allege that relators could have used a special statutory procedure to challenge the BOE's decision. By contrast, in *McGinn*, there was at least an argument that the relators had two available remedies: they could

have filed a protest pursuant to R.C. 307.95, or they could have sought an adjudication of the petitions' validity from the common pleas court, under R.C. 307.94. ___ Ohio St.3d ___, 2017-Ohio-7714, __ N.E.3d ___, at ¶ 28 (DeWine, J., concurring in judgment only).

{¶ 24} Those statutory remedies are not available to relators in this case. R.C. 307.94 addresses initiative petitions to adopt county charters. The statute authorizes a petition committee to file either a protest or an action in the common pleas court if the county board of elections invalidates a county-charter petition. It does not authorize those remedies for municipal-charter petitions, which are governed by different sections of the Revised Code.

{¶ 25} The General Assembly recently enacted 2016 H.B. No. 463 ("H.B. 463"), which purported to expand the duties of the county boards of elections. Prior to the passage of H.B. 463, there does not appear to have been a statutory mechanism for appealing an elections board's decision concerning a municipal-charter petition. Even under the amended statute, the committee for a municipal-charter petition has no statutory cause of action in the common pleas court. But along with expanding the review authority of county elections boards, H.B. 463 did add one avenue of appeal: "The finding of the board shall be subject to challenge by a protest filed pursuant to division (B) of section 307.95 of the Revised Code." R.C. 3501.38(M)(1)(b).

{¶ 26} The first requirement of R.C. 307.95 is that a protest under that section must be filed no later than 4:00 p.m. "of the ninety-seventh day before the election." R.C. 307.95(B). The 97th day before the November 7, 2017 election was Wednesday, August 2, 2017, more than one month before the BOE even invalidated the petitions in this case. A statutory protest that one is time-barred from pursuing before one's cause of action even arises cannot constitute an adequate alternative remedy.

**{¶ 27}** Nor is the BOE correct that relators had an adequate remedy in the form of a declaratory-judgment action to challenge the constitutionality of H.B. 463, coupled with a request for a prohibitory injunction to block the BOE from applying the terms of the new statute. The BOE faults relators for "many months of inaction" during which they could have challenged the new statutory enactments in a nonexpedited fashion.

**{¶ 28}** There are at least two significant flaws in the BOE's argument. First, relators had no viable claim that would have allowed them to challenge the statute until the BOE acted under its authority to their detriment. Therefore, if relators had brought an earlier declaratory-judgment action, any court "would have recognized the complaint as a quintessential request for an advisory opinion and dismissed it for failure to state a claim," *State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E.3d 463, ¶ 23 (plurality opinion). Notably, the BOE's argument that this case is barred by laches, because relators could have filed an action for declaratory judgment when H.B. 463 was passed, should fail for the same reason.

**{¶ 29}** Second, the BOE's assertion that a declaratory judgment and a prohibitory injunction would have been a complete remedy is not correct. An injunction barring the BOE from using the H.B. 463 statutory amendments to invalidate the petitions would not be a complete remedy, because it would not have required the BOE to place the proposed amendments on the ballot. Only a declaratory judgment coupled with a mandatory injunction could have prevented the BOE from invalidating the petitions on some other basis. *See State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 28 (holding that "a prohibitory injunction would not provide relators with the relief they request: an order to *compel* the ballot board * * * to certify its approval of their proposed constitutional amendment as written" [emphasis sic]). And a mandatory injunction is an extraordinary remedy that does not preclude a writ of

mandamus. *State ex rel. Am. Civ. Liberties Union of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 25; *State ex rel. Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, ¶ 25.

{¶ 30} Despite the absence of an available remedy, it could be argued that mandamus should not issue in this case because " 'constitutional challenges to legislation are generally resolved in an action in a common pleas court rather than in an extraordinary writ action,' " *State ex rel. Brooks v. O'Malley*, 117 Ohio St.3d 385, 2008-Ohio-1118, 884 N.E.2d 42, ¶ 11, quoting *Rammage v. Saros*, 97 Ohio St.3d 430, 2002-Ohio-6669, 780 N.E.2d 278, ¶ 11. But this rule is simply a corollary to the principle that a party must avail itself of alternative legal remedies, if available. *See Rammage* at ¶ 11. The rule does not apply in expedited election cases, in which there is no sufficiently speedy alternative remedy. *State ex rel. Watson v. Hamilton Cty. Bd. of Elections*, 88 Ohio St.3d 239, 258, 725 N.E.2d 255 (2000) ("It is appropriate to consider the merits of [the relator's] constitutional claim in this mandamus action because an action for a declaratory judgment and prohibitory injunction would not be sufficiently speedy in this expedited election case").

{¶ 31} I would accordingly conclude, consistently with our prior jurisprudence in the expedited-election-case context, that relators lacked an adequate remedy at law.

### B. Clear legal right and clear legal duty

{¶ 32} We review a decision of a county board of elections to determine whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.

{¶ 33} Municipalities have "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary

and other similar regulations, as are not in conflict with general laws." Ohio Constitution, Article XVIII, Section 3. This authority is also extended to the people acting in their sovereign capacity: "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action * * *." Ohio Constitution, Article II, Section 1f. The permissible subject matter of a municipal initiative or referendum petition is limited by these clauses. *See, e.g.*, *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 545, 697 N.E.2d 181 (1998).

{¶ 34} We have held that if a proposed measure does not conform to the constitutional prerequisites for a ballot measure, the county boards of elections "have not only discretion but an affirmative duty to keep such items off the ballot." *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 9.

{¶ 35} However, we have also held that elections boards cannot determine whether a measure, in substance, would be unconstitutional if enacted. *Id.* at ¶ 4-5, 12 (elections board must place measure on the ballot despite its concern that the measure would be unenforceable because it conflicted with the Ohio Constitution). Nor can a county board of elections invalidate a proposed ordinance on the grounds that the measure is unlawful or unconstitutional in the manner of its passage. *State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections*, 80 Ohio St.3d 165, 169, 685 N.E.2d 224 (1997).

{¶ 36} The majority concludes that the BOE did not violate a clear legal duty in rejecting relators' petitions because the proposed amendments purport to create a private cause of action. The majority reasons that this case is controlled by *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696. I disagree. First, we have not previously considered the issue of who can create a private cause of action. The majority

decides this issue in a conclusory manner without significant analysis. *See* majority opinion at ¶ 15. However, regardless of the answer to the question of who can create a private cause of action, we should reach the constitutional issue because *Sensible Norwood* does not apply to this case.

{¶ 37} The reliance on *Sensible Norwood* by the BOE and the majority is misplaced, and not "sensible." In that case, this court offered two reasons for invalidating a proposed municipal marijuana ordinance. In addition to holding that municipalities have no power to define felonies, the court also held that the ordinance was administrative because it would have changed the manner in which local police and courts could enforce specific existing laws. *Sensible Norwood* at ¶ 14-18.

{¶ 38} In *Sensible Norwood*, the proposed ordinances purported to create felony offenses, and in doing so they clearly exceeded the power of a municipality to make the violation of any of its ordinances a misdemeanor. The issue here— whether a municipality has the authority to create a private cause of action—has not previously been ruled upon by this court. Whether a municipality can act in this way required a legal determination—one that went beyond the more straightforward determination made in *Sensible Norwood*.

{¶ 39} Ultimately, the constitutionality of the proposed amendments at issue in this case would need to be determined by a court if they ever became effective. We have made clear that an unconstitutional proposal may be a proper item for referendum or initiative and that such a proposal becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction. *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, at ¶ 11. I would accordingly reserve a ruling on the constitutionality of the proposed amendments in the event that they become law and are subsequently challenged in court.

**{¶ 40}** Thus, I disagree with the majority's conclusion that this case can be resolved on the basis of this court's pre-H.B. 463 caselaw, particularly *Sensible Norwood*. I would address the constitutionality of R.C. 3501.11(K)(2). And I would conclude that a county board of elections does not have the authority to invalidate petitions on the basis that a municipality is not authorized to create private causes of action, pursuant to our line of decisions including *Youngstown* and *Hazel*, 80 Ohio St.3d 165, 685 N.E.2d 224.

**{¶ 41}** At issue in *Youngstown* was a ballot measure to adopt a "Community Bill of Rights" that would have, among other things, made it unlawful to extract oil and gas within the city through the process of hydrofracturing. *Youngstown* at ¶ 2. The county board of elections refused to certify the measure because a plurality of this court had concluded in *State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128, ¶ 34, that local ordinances that impede or obstruct oil-and-gas-production operations are unconstitutional and void. *Youngstown* at ¶ 4. This court granted a writ of mandamus compelling the elections board to certify the measure, because

> [t]he boards of elections * * * do *not* have authority to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms. An unconstitutional amendment may be a proper item for referendum or initiative. Such an amendment becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction.

(Emphasis sic.) *Id.* at ¶ 11.

**{¶ 42}** Our holding in *Youngstown* is consistent with the principle that the authority to make legal rulings is reserved for the judiciary alone. *See Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 116. I would

accordingly hold that the constitutionality of a municipal ordinance creating a private cause of action is a matter to be decided in postenactment litigation, not a subject within the authority of a county board of elections to determine. *See Hazel* at 169; *Thurn*, 72 Ohio St.3d at 293, 649 N.E.2d 1205 ("any claim alleging the unconstitutionality or illegality of the substance of the proposed ordinances prior to their approval by the electorate is premature").

*1. The constitutionality of H.B. 463*

**{¶ 43}** The statutory amendments made by H.B. 463 do not change this analysis. Newly enacted R.C. 3501.11(K)(2) provides that the county boards of elections must

> [e]xamine each initiative petition, or a petition filed under section 307.94 or 307.95 of the Revised Code, received by the board to determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code. The petition shall be invalid if any portion of the petition is not within the initiative power.

R.C. 3501.38(M)(1) provides that the elections boards shall examine petitions to determine

> (a) [w]hether the petition falls within the scope of a municipal political subdivision's authority to enact via initiative, including, if applicable, the limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution on the authority of municipal corporations to adopt local police, sanitary, and other

similar regulations as are not in conflict with general laws, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot. The petition shall be invalid if any portion of the petition is not within the initiative power; or

(b) [w]hether the petition falls within the scope of a county's authority to enact via initiative, including whether the petition conforms to the requirements set forth in Section 3 of Article X of the Ohio Constitution, including the exercise of only those powers that have vested in, and the performance of all duties imposed upon counties and county officers by law, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot.

{¶ 44} The separation-of-powers doctrine is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 159, 503 N.E.2d 136 (1986). This court's jurisprudence limiting the authority of county boards of elections to review the constitutionality of proposed ballot measures rested squarely on separation-of-powers considerations. *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, at ¶ 11 (holding that questions of constitutional interpretation are resolved by the courts, not the elections boards); *State ex rel. Ebersole v. Powell*, 141 Ohio St.3d 17, 2014-Ohio-4283, 21 N.E.3d 274, ¶ 6 ("Nor can the city council assess the constitutionality of a proposal, because that role is reserved for the courts"). It follows that the General Assembly's grant of judicial-review power to the elections boards violates the Constitution, because "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers," *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of

the syllabus. For these reasons, I would hold that R.C. 3501.11(K)(2) is unconstitutional to the limited extent that it requires elections boards to make constitutional and legal conclusions pursuant to R.C. 3501.38(M). *See Hazel*, 80 Ohio St.3d at 169, 685 N.E.2d 224; *Thurn*, 72 Ohio St.3d at 293, 649 N.E.2d 1205.

### 2. *Legislative vs. administrative provisions*

**{¶ 45}** The BOE has presented an alternative theory under which it argues that relators' petitions are invalid: it contends that the proposed charter amendments contain administrative provisions. For example, the BOE points to the provisions restricting the authority of Youngstown law-enforcement officials and cooperating agencies to surveil, detain, arrest, or otherwise impede citizens enforcing the rights conveyed by the proposed amendments.

**{¶ 46}** Article II, Section 1f of the Ohio Constitution limits the initiative and referendum powers to questions municipalities are authorized by law to control by legislative action. "Because citizens of a municipality cannot exercise referendum powers greater than what the Constitution affords, an administrative action [by the municipal legislature] is beyond the scope of the referendum power." *Ebersole*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, at ¶ 29; *see also Buckeye Community Hope Found.*, 82 Ohio St.3d at 545, 697 N.E.2d 181 (holding that municipal ordinances and resolutions that qualify as administrative are not subject to referendum). In *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, this court extended the legislative-administrative dichotomy to municipal initiatives. In *Upper Arlington*, we held that a county board of elections abused its discretion by denying a protest and placing an administrative initiative on the ballot, and we issued a writ of prohibition. *Id.* at ¶ 25-27.

**{¶ 47}** The test for determining whether an action is legislative or administrative is " 'whether the action taken is one enacting a law, ordinance, or regulation, or executing a law, ordinance, or regulation already in existence.' "

*Ebersole* at ¶ 30, quoting *Donnelly v. Fairview Park*, 13 Ohio St.2d 1, 233 N.E.2d 500 (1968), paragraph two of the syllabus. To qualify as an administrative measure, an ordinance must execute or administer "preexisting" laws. *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 35. If an ordinance or initiative enacts new law (as relators' two proposed amendments would do if passed), it is legislative, even if it contains directions as to how to implement the law. *Id.* (holding that a proposed ordinance approving a railroad grade-separation project did not become administrative by virtue of the fact that it specified the location of the project and the amount of the village's financial contribution to the project); *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Election*s, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 38-39 (proposed ordinance directing city to acquire land for use as parkland was legislative even though it prescribed how the city was to acquire the land).

{¶ 48} In contrast to *Sensible Norwood*, where this court also held that the ordinance was administrative because it would have changed the manner in which local police and courts could enforce specific existing laws, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, at ¶ 14-18, the BOE has identified no existing statutes that would be altered or enforced differently under the proposed charter amendments. The *Sensible Norwood* problem in this case, if such a problem exists, is not that the proposed amendments are administrative but that they arguably bar state officials from enforcing state law within the confines of the city. *Sensible Norwood* established that an ordinance preventing the enforcement of state law exceeds the legislative authority of a municipality. *Id.* at ¶ 18. If one interprets the "surveil, detain, arrest, or otherwise impede" clauses in the proposed amendments as barring federal or state officials from enforcing their laws within the jurisdiction, then the amendments would be improper.

**{¶ 49}** However, the proposed charter language, in context, does not purport to nullify federal and state law. The complete provision reads: "City of Youngstown law enforcement, and cooperating agencies acting within the jurisdiction of the City of Youngstown, shall have no lawful authority to surveil, detain, arrest, or otherwise impede natural persons enforcing these rights." The parties give no attention to the meaning of the phrase "cooperating agencies."

**{¶ 50}** The phrase "cooperating agencies" appears to refer to local law-enforcement entities that enter into mutual-aid agreements. *Owensby v. Cincinnati*, 385 F.Supp.2d 626, 639 (S.D.Ohio 2004). Local law enforcement may enter into these agreements with other local jurisdictions (municipal corporations, townships, township police districts, joint police districts, or county sheriffs) for the use of police services or equipment. R.C. 737.04. It seems unremarkable to require cooperating law-enforcement officers to abide by local city ordinances while they are operating within the city, pursuant to agreement. Unfortunately, if such an agreement exists in this case, it is not in the record.

**{¶ 51}** Given the ambiguous scope of the "surveil, arrest, detain, or otherwise impede" clauses, we should rule on the side of ballot access and let the matter be resolved, if necessary, through fact-finding during postenactment litigation. *See Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, at ¶ 11.

**{¶ 52}** Finally, the BOE objects to language in the proposed amendments purporting to limit the ability to challenge the amendments; the BOE calls these "administrative" provisions. The relevant words in the two amendments differ from each other. The Youngstown Drinking Water Protection Bill of Rights ("Water Amendment") provides:

> Any corporation, or other business entity, that violates the
> rights in this Amendment shall not be deemed a "person" to the

20

extent that such treatment would interfere with the rights enumerated by this Amendment, nor shall it possess any other legal rights, powers, privileges, immunities, or duties that would interfere with the rights, including the power to assert state, federal or international preemptive laws in an attempt to overturn this Amendment, or the power to assert that the people of the City of Youngstown lack the authority to adopt this Amendment.

While this provision may appear problematic under *Sensible Norwood* because it seems to be aimed at divesting the courts of jurisdiction to hear challenges brought by corporations, it is distinguishable from the proposed marijuana ordinances at issue in that case, as I have discussed above. In *Sensible Norwood*, the proposed ordinances purported to create felony offenses, and in doing so they clearly exceeded the power of a municipality to make the violation of any of its ordinances a misdemeanor. The above-quoted provision of the Water Amendment is ambiguous, and its constitutionality would need to be determined by a court if that provision ever became effective. We have made clear that an unconstitutional proposal may be a proper item for referendum or initiative and that such a proposal becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction. *Youngstown* at ¶ 11. I would accordingly reserve a ruling on the constitutionality of this provision in the event that the provision becomes law and is subsequently challenged in court.

{¶ 53} The other provision objected to by the BOE is found in the portion of the People's Bill of Rights for Fair Elections and Access to Local Government ("Elections Amendment") providing:

> The people of Youngstown possess the right to make law through local initiative processes. That right shall include but not

be limited to the right to be free from interference with the exercise of the initiative power, that there shall be no attempt to stop the placement of an initiative proposal on the ballot based on substantive challenges, claimed illegality or unconstitutionality, or review of the content, intent, or surmised effect of the measure prior to being presented to the voters and before it is enacted into law. This right shall require that all issues duly petitioned in accordance with law shall appear on the ballot in the same manner as is customary for other issues, that they be presented with unbiased summary language on the ballot and that the complete legislative proposal be posted at each polling location.

This paragraph, and especially the second and third sentences, appears to be addressed to the BOE and designed to curtail its ability to conduct a substantive evaluation of proposed initiatives. Based on *Youngstown* and my conclusion that R.C. 3501.11(K)(2) is unconstitutional to the limited extent that it incorporates R.C. 3501.38(M), I would hold that this language is merely a restatement of existing law, and does not disqualify the Elections Amendment from the ballot. *See Citizen Action*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, at ¶ 39, quoting the relator's brief ("a holding that an ordinance is administrative simply because it contains language directing that Ohio law should be followed would result in the extinction of 'virtually all legislative actions' "). Alternatively, should the Elections Amendment ever pass, it would be the role of the courts to determine whether this language invalidates the provision.

## II. CONCLUSION

{¶ 54} I would hold that pursuant to *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, the BOE's role in processing initiative petitions does not extend to evaluating the substantive ballot-worthiness of a proposal. Only

to the limited extent that R.C. 3501.11(K)(2) incorporates R.C. 3501.38(M), I would declare it unconstitutional. In determining that the proposed charter amendments fall outside the scope of Youngstown's power to enact through initiative, the BOE, pursuant to R.C. 3501.11(K)(2), made substantive constitutional and legal determinations that are reserved for the judiciary. In fact, when BOE member David Betras moved the BOE to deny certification, he expressly referenced Article XVIII, Sections 3 and 7 of the Ohio Constitution in asserting that the proposed amendments were unconstitutional.

{¶ 55} Because relators have shown the existence of a clear legal right and of a clear legal duty on the part of the BOE as well as the lack of an adequate remedy at law, and because the BOE abused its discretion and erred as a matter of law when it refused to certify relators' petitions, this court should grant the requested writs of mandamus.

O'CONNOR, C.J., and O'NEILL, J., concur in the foregoing opinion.

_____

Terry J. Lodge, for relators.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Sharon K. Hackett, Linette M. Stratford, and Gina DeGenova Zawrotuk, Assistant Prosecuting Attorneys, for respondents.

Porter, Wright, Morris & Arthur, L.L.P., and L. Bradfield Hughes, in support of respondents, for amici curiae Affiliated Construction Trades Ohio Foundation, Ohio Chamber of Commerce, and American Petroleum Institute.

Mangano Law Offices Co., L.P.A., and Joseph J. Guarino III and Ryan K. Hymore, in support of respondents, for amici curiae Western Reserve Building and Construction Trades Council, Youngstown Warren Regional Chamber, Youngstown Warren Black Caucus, Community Mobilization Coalition, and Mahoning Trumbull AFL-CIO.

_____